**United States District Court**

**District of New Hampshire**

Case No.

Kristina Pastoriza,

294 Gibson Road, Easton, NH 03580,

and

Ruth Ward,

386 Route 123 South, Stoddard, NH 03464,

plaintiffs

v.

Public Service Company of New Hampshire dba Eversource,

780 N. Commercial Street, Manchester, NH 03101,

and

United States of America,

Federal Energy Regulatory Commission,

888 First Street NE, Washington DC 20426,

and

ISO-New England, Inc.

One Sullivan Road, Holyoke, MA. 01040,

defendants

**Complaint for Declaratory Judgment, Injunctive Relief, Damages and Fees and Costs of Litigation**

**Jury Demanded**

Plaintiffs, for their Complaint, state that:

## Parties

## Plaintiffs Have Standing to Bring This Action

1. Plaintiff, Kristina Pastoriza, an individual, lives at 294 Gibson Road, Easton, New Hampshire.

2. Plaintiff, Ruth Ward, an individual, resides at 386 Route 123 South, Stoddard, New Hampshire.

3. Plaintiffs are the fee simple owners of a beautiful 400 parcel of land in Easton, New Hampshire.

4. The property is burdened by a powerline easement acquired by Public Service Company of New Hampshire in 1948 from plaintiffs' predecessors in title to deliver retail electricity to rural New Hampshire. .

5. Plaintiff Kristina Pastoriza lives on the property and has standing to bring this action.

6. Plaintiff Ruth Ward is an owner of the property, is Eversource retail electricity customer, and has standing to bring this action.

## Defendants

**Public Service Company of New Hampshire dba Eversource**

7. Defendant, Public Service Company of New Hampshire, dba Eversource Energy (Eversource), is a public utility with its principal place of business at 780 N. Commercial Street, Manchester, New Hampshire.

8. Eversource sells electricity at retail to customers in New Hampshire and owns and operates the transmission and distribution facilities on which electricity is delivered to retail customers.

9. Eversource, as a public utility, recovers the capital costs of its transmission and distribution facilities together with a return on investment from its retail customers.

10. The Eversource powerline easement on plaintiff's' property, is occupied by a 115 kV alternating current line designated X-178 on 6 wooden structures about 50 feet high. X-178 provides, through substations, electricity to retail customers. The substations, located at Beebe River in Campton, New Hampshire, Woodstock, New Hampshire and Whitefield, New Hampshire, reduce the voltage to 34.5 kV for distribution to retail customers.

**Federal Energy Regulatory Commission**

11. The Federal Energy Regulatory Commission (FERC) is an agency of the United States government created under the authority of the of the Federal Power Act (FPA) and is vested with jurisdiction over the facilities constructed for the interstate transmission of electricity for sale at wholesale rates. FPA Section 201(a); 16 USC Section 824(b)(1).

12. The states retain authority over any other sale of electrical energy, including retail sales. *Id.*

13. The FPA required FERC to divide the country into regions for the interconnection and coordination of facilities for the generation, transmission and sale of energy. FPA Section 202(a), 16 USC Section 824a(a). FERC was assigned the duty to promote and encourage transmission interconnection and coordination.

14. Public utilities, such as defendant Eversource, are required to file rates within FERC's jurisdiction for FERC approval and "all rates and charges made, demanded or received for or in connection with the transmission and sale of electric energy…shall be just and reasonable" and "no public utility shall, with respect to any transaction or sale…subject any person to any undue prejudice or disadvantage" or "maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service". FPA Sections 205(a)-(b), 16 USC Sections 824d(a)-(b).

15. The FPA required FERC to ensure that electricity rates, charges, and classifications are not "unjust, unreasonable, unduly discriminatory or preferential." FPA Section 206(a), 16 USC Section 824e(e).

16. FERC, in accord with the FPA, authorized the creation of regional electricity transmission planning and cost allocation entities known as regional transmission organizations (RTOs) charged with the responsibility to ensure that specific planning principles prevent undue discrimination and preference in transmission service. The RTOs must consider transmission needs that are driven by public policy and are the

most efficient and cost-effective solutions to regional and beyond transmission needs. The RTOs must satisfy FERC ordered regional cost allocation principles.

17. FERC, in accord with its responsibilities under the FPA, issued Orders 888, 890, 1000, 1000-A and on May 13, 2024, FERC issued Order 1920, with effective date of August 12, 2024, each of which Order is pertinent to the matters raised in this Complaint.

18. FERC, in Order 1920, at page 98, specially described the conduct of ISO-NE regarding projects that ISO-NE has not included in the required regional transmission planning process: "…In ISO-NE, spending on in-kind transmission replacements, which are not part of the regional transmission planning process, has been significant. Between 2016 and 2022, over $2.5 billion has been spent on in-kind replacement projects that have entered service and, as of 2022, an additional $3.122 billion of in-kind replacement projects had been proposed, planned, or were under construction…."

19. FERC, in Order 1920, continued at page 99: "…Rather, the trends regarding use of these processes, as well as in-kind replacement processes, provide additional evidence to support our finding that existing regional transmission planning and cost allocation requirements are inadequate without reform…".

20. FERC's particular attention in Order 1920 focused on ISO-NE and its lack of process for "in-kind replacement" projects identifies the gravamen of plaintiffs' Complaint.

**ISO-New England, Inc.**

21. Plaintiffs restate the allegations of paragraphs 1-20.

22. Defendant ISO-New England, Inc. (ISO-NE) is a foreign non-profit corporation licensed to do business in New Hampshire with its principal place of business at One Sullivan Road, Holyoke, Massachusetts.

23. ISO-NE was created pursuant to the Federal Power Act as an RTO.

24. ISO-NE is required by the FPA and FERC Orders, including Orders 888, 890, 1000, 1000-A, 1000-B and recently issued Order 1920 on May 13, 2024 with effective date of August 12, 2024, to ensure that public utilities, such as defendant Eversource, engage in the transmission planning process and principles required by the FPA and the FERC Orders, rate-payer funded projects are the most efficient and cost effective, the transmission rates charged to utilities' retail customers are just and reasonable and any transaction does not subject retail customers to undue prejudice or disadvantage or unreasonable differences in rates, charges, service, facilities, or in any other respect or between classes of service.

## Jurisdiction and Venue

25. Plaintiffs restate the allegations of paragraphs 1-24.

26. This Court has subject matter jurisdiction of this Complaint as it involves the enforcement of a federal statute. Venue is proper because the plaintiffs are residents of New Hampshire and the defendants Eversource and ISO-NE are authorized to do business in New Hampshire

**Plaintiffs Seek Declaratory Judgment, Injunction, Damages and Fees and Costs of Litigation**

**Predicate Facts**

**The Conduct of Defendant ISO-NE and the X-178 Rebuild Will Wrongfully Impact Retail Ratepayers**

27. Plaintiffs restate the allegations of paragraphs 1-26.

28. In early 2024 defendant Eversource presented its "New Hampshire Line X-178 Rebuild" to the ISO-NE Planning Advisory Committee (PAC) at its February 28, 2024, meeting. Eversource made a second presentation to PAC on June 20, 2024, that included additional analysis. The X-178 proposals include a "preferred solution" that Eversource represents as a complete rebuild and expansion to remedy 43 structures it asserts need repair or replacement. In both the February and June presentations, Eversource represented that the existing wood H-framed structures will be replaced with steel structures. The original ground wire will be replaced with fiber optic ground wire. The 795 ASCR conductor (908 amp/1,094 #s/thousand feet) with 1272 ACSS conductor (2,200 amps, 1,633 #s/thousand feet). The project will include the construction of a graveled permanent heavy equipment road on the 49 miles of the easement 9 inches deep and 16-20 feet wide (excluding wetlands); 100 feet x 100 feet graded and level permanent crane pads around each (580) structure; and 50 feet x 100 feet permanent graded and level pull pads (82).

29. The construction of X-178, because of the uneven terrain, will cause the replacement of native topsoil and vegetation ecosystems with gravel and riprap and cause the loss of native boulders and glacial erratics.

30. The new towers will be octagonal, on average 13 feet higher than the existing wooden H-frame structures and will include much larger insulator strings.

31. The proposed X-178 rebuild will run from Whitefield to the Beebe River substation.

32. Eversource projects the cost of the X-178 rebuild may be as much as $400,000,000.00

33. The project costs will have a substantial impact on the transmission costs to all New Hampshire retail ratepayers who receive electricity on Eversource transmission facilities, including plaintiff Ruth Ward.

34. On June 17, 2024, in advance of June 20, 2024, PAC meeting plaintiffs requested that their interests be recognized in the PAC review process.

35. On June 18, 2024, ISO-NE responded, through its attorney, to plaintiffs' request with the representation that X-178 as an "asset condition" project is not subject to ISO-NE's planning process requirements established under FERC Orders 890 and 1000, noting that FERC Order 1920 establishes "new requirements…for right-sizing" replacement facilities. The message went on to assert that Order 1920 would not go into effect against ISO-NE until June, 2025 when it would submit a "compliance filing".

36. On June 19, 2024, plaintiffs requested that ISO-NE, in accordance with FERC Order 1920, suspend consideration of X-178 until a process was in place that would ensure that the project would not result in unjust, unreasonable and unduly discriminatory rates.

37. On June 24, 2024, plaintiffs asked ISO-NE how approval or non-approval of X-178 would be officially announced and what, if any, evidentiary record would be publicly available upon which the PAC decision would be grounded. ISO-NE did not respond to the plaintiffs' request.

38. On July 3, 2024, plaintiffs requested that ISO-NE, in good faith, provide plaintiffs the language in FERC Order 1000 that exempts large projects such as X-178 from any ISO-NE planning scrutiny that ensures just and reasonable rates as required.

39. On July 12, 2024, ISO-NE replied to plaintiffs' July 3, 2024, request and repeated its representation that FERC Orders 890 and 1000 do not apply to "asset management" projects.

40. ISO-NE has not created a record or published a finding or order as of the date of this Complaint how it determined that X-178 is exempt from the planning process required by the FPA and pertinent FERC Orders.

41. ISO-NE has not provided a factual or legally supportable, good faith definition of "asset condition" project rooted in the FPA or in any FERC Order that allows public utilities such as Eversource to escape the transmission planning process cost scrutiny required by FERC Orders 890, 1000 and 1920.

42. ISO-NE has not provided a good faith explanation for ignoring FERC Order 1920.

43. ISO-NE chose, in bad faith, to allow Eversource, on June 20, 2024, to present its "Line X-178 Rebuild Follow-Up" to PAC notwithstanding plaintiffs' request to suspend the proceeding until a FERC Order 1920 compliant process was in place.

44. Eversource's retail ratepayers, such as plaintiff Ruth Ward, will be substantially impacted by the imposition of transmission charges caused by the rebuild of X-178 that have not been subjected to scrutiny by ISO-NE or any scrutiny whatever to ensure that the charges are just, reasonable and non-discriminatory for which plaintiff Ruth Ward, an Eversource ratepayer, has no adequate remedy at law.

**Eversource, Well Knowing That X-178 Is a Project That Must Be Subjected to ISO-NE Planning Scrutiny Under the FPA and FERC Orders to Ensure Just and Reasonable Rates for Retail Ratepayers Is engaging in Wrongful Conduct for Which Plaintiff Ruth Ward, an Eversource Retail Ratepayer, Has No Adequate Remedy at Law**

45. Plaintiffs restate the allegations of paragraphs 1-44.

46. Eversource, a public utility, is subject to the transmission planning scrutiny required by the FPA and the Orders of FERC. That scrutiny requires Eversource to build transmission infrastructure that ensures that the costs charged to its retail customers are just, reasonable and non-discriminatory.

47. Eversource wrongfully proposed the X-178 project and will wrongfully construct the project well-knowing that the project has not been subjected to the planning scrutiny required by law, conduct for which plaintiff Ruth Ward, an Eversource retail ratepayer, has no adequate remedy at law.

## Eversource and the Historical Purpose of the 1948 Easement Encumbering the Ward and Pastoriza Property

48. Plaintiffs restate the allegations of paragraphs 1-47.

49. After the Second World War the demand for retail electricity in New Hampshire's North Country was clear. Homes, farms and businesses needed electricity. The historic background made it easy for PSNH in the late 1940s and early 1950s to persuade people to sign easements to expand the availability of electricity. Easement grantors were induced to enter the grant upon the PSNH representation that the easement was necessary to bring the needed electricity.

50. Historic NHPUC records in New Hampshire Public Utility Commission (NHPUC) condemnation cases show that PSNH paid $20 per acre to acquire the easements, plus $15 per 1000 board feet for pine and $2.00 per cord for firewood.

51. The easement terms burdening plaintiffs' property expressly set forth the intention of the parties at the time of the execution of the easement. The large X-178 rebuild project exceeds the terms of the 1948 easement.

## The Wrongful Conduct of the Defendant FERC

52.  Plaintiffs restate the allegations of paragraphs 1-51.

53. FERC wrongfully, in breach of its duties under the FPA and its own Orders, permitted ISO-NE to exempt large transmission projects, including X-178, from a transmission planning process that will ensure that retail ratepayers such as plaintiff Ruth Ward pay just, reasonable and non-discriminatory rates.

### The Wrongful Conduct of the Defendant ISO-NE

54. Plaintiffs restate the allegations of paragraphs 1-53.

55. ISO-NE wrongfully, in breach of its duties under the FPA and FERC Orders and in bad faith, has exempted defendant Eversource from a transmission planning process for the X-178 rebuild that will ensure that retail ratepayers such as plaintiff Ruth Ward pay just, reasonable and non-discriminatory rates.

### The Wrongful Conduct of Defendant Eversource and Its Breach of the 1948 Easement Term Burdening Plaintiffs' Property

56. Plaintiffs restate the facts contained in paragraphs 1-55.

57. The large rebuild of X-178 was never within the contemplation of the 1948 grantors of the easement on plaintiffs' property

58. Eversource claims rights over the easement that it does not own, a breach of the terms of the easement.

## Unreasonable Interference and Encroachment on Easements

59. Plaintiffs restate the facts contained in paragraphs 1-58.

60. The Eversource presentation to ISO-NE's PAC entitled "New Hampshire X-178 Rebuild Follow-Up" provides details that will breach the terms of the easement. The construction of X-178 on plaintiffs' beautiful property will industrialize plaintiff's' viewshed, ruin their enjoyment of the fields and mountains and diminish the property value of their land.

61. The construction of the X-178 project will require the use of heavy equipment, including excavators, loaders, drilling rigs, cranes, wire pulling rigs, concrete trucks and dump trucks.

62. The X-178 project will damage the aesthetics of the plaintiffs' beautiful 400-acre property and is, therefore, an unreasonable use of the easement that will interfere with and be a wrongful encroachment on the easement, to the disadvantage of and damage to plaintiffs and the value of their property.

## CLAIMS FOR RELIEF

Plaintiffs respectfully demand that the Court:

1. Order FERC to enforce its Orders and end the ISO-NE practice of exempting large transmission rebuild projects, including X-178, from a transmission planning process that will ensure that retail ratepayers, who have no adequate remedy at law, pay just, reasonable and non-discriminatory rates.

2.  Order ISO-NE to comply with FERC Orders 890, 1000 and 1920 and end the practice of exempting large transmission rebuild projects, including X-178, from a transmission planning process that will ensure that retail ratepayers such as plaintiff Ruth Ward, who have no adequate remedy at law, pay just, reasonable and non-discriminatory rates.

3. Declare that the Eversource claim of right to rebuild the powerline on plaintiffs' property is a breach of the express terms of the 1948 easement that will be an unreasonable interference with plaintiffs' rights and a disadvantage to the use of plaintiffs' property for which they have no adequate remedy at law, entitling them to injunctive relief.

4. Award plaintiffs monetary damages for the injury to the aesthetics and market value of their beautiful property.

5. Award plaintiffs their attorney fees, expert fees and the costs of litigation predicated on the bad faith conduct of the defendants for their wrongful failure to ensure that retail ratepayers such as plaintiff Ruth Ward enjoy just, reasonable and non-discriminatory rates compliant with the FPA.

6. Award such other relief proper in the matter.

## Jury Demand

Plaintiffs demand that a jury determine the factual issues raised by their Complaint.

Arthur B. Cunningham

August 16, 2024                              /s/ Arthur B. Cunningham

Attorney for plaintiffs
PO Box 511, Hopkinton, NH 03229
603-219-6991(C)
abcunninghamlaw@outlook.com
Reg. No. 18301